### No. 5680.

LA. ICE COMPANY *vs.* STATE NATIONAL BANK.

| 32 | 597 |
|----|-----|
| 49 | 700 |

#### ON MOTION TO DISMISS.

This Court has the power to construe Constitutional as well as Statutory provisions.

The framers of the Constitution of 1879 never intended, in creating Courts of Appeal for the country parishes, by Art. 95, and a Court of Appeals for the Parish of Orleans, by Art. 128, to make any unjust distinction between those different sections of the State, and to deprive litigants in the Parish of Orleans of the right of appeal when the amount in dispute is exactly $1,000.

The words "less than one thousand dollars" in art. 128, were evidently used by inadvertence, and the jurisdiction of the Court of Appeals for the parish of Orleans, like that of the other Courts of Appeal in the State, extends to cases in which the amount in dispute is $1000.

A PPEAL from the Fifth District Court, parish of Orleans.    *Cullom,* J.

---

J. McConnell for Defendants, Appellants.

E. Evariste Moïse for Plaintiff and Appellee.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J.    The amount in dispute in this case, which was instituted while the constitution of 1868 was in force, and comes on appeal from a District Court for the Parish of Orleans—is exactly one thousand dollars, exclusive of interest.

With the averments that, by the adoption of the Constitution of 1879 this Court has ceased to have jurisdiction over it and that the

39

Court of Appeals for the parish of Orleans is denied the power of re-vision of the adjudication complained of,—the Plaintiff moves the dismissal of the appeal, in order that the judgment of the lower court, in his favor, may in furtherance of its assumed sovereignty receive full execution without delay.

We are then called upon to determine whether this case shall remain to be tried here, or shall be transferred to the Court of Appeals for the Parish of Orleans, or shall be stricken from the docket of this Court. Our powers of construction of the terms found in the provisions of the organic law, on the subject, are thus brought into activity.

There can be no question as to the right of the Judiciary to construe, as well constitutional as statutory enactments, by which persons or property, in the territory within which those enactments are intended to operate, are to be affected. From the earliest days of civilization in all countries, in which reason and law have prevailed, such a right has been constantly and uniformly recognized as an inherent power which that branch of government could and should, in cases of emergency, exercise, to avert public or private wrong or mischief. It cannot be conceived that it could be more logically, legitimately, and safely lodged elsewhere. In this country, this power has been extended to this extremity, that the Judiciary has in innumerable instances pronounced, and daily continue to do so,—the nullity of provisions adopted by the law-making power in antagonism of constitutional inhibition, rendering them totally inoper-ative. The exercise of such right and power is, however, justly regulated not only by special rules, but also by custom and usage—the wisdom of which is consecrated by Jurisprudence. Cooley on Const. Lim. ch. 11, p. 13, ch. iv. pp. 44, 45, 53, 54, 55, 57, 59, 80 ; Sedgwick on Statutory and Constitutional Law, p. 229 et seq. 9–238 ; Lieber on Civil Liberty and Civil Government ; De Tocqueville, Democracy in America, c. 6 ; Blackstone's Rules, vol. 1, pp. 60, 61, rules 4 and 5 ; Lord Coke's Rules, as found in Sedgwick, p. 235 ; Bouvier's Law Dic. vo. Construction ; Dechattelleux vs. Fairchild, 15 Penn. St. 18 ; Attorney General ex rel. Makay vs. Detroit Plank Co., 2 Mich. 138 ; Bates vs. Kimball, 2 Chip. 77 ; Smith on Stat. and Constitutional Construction, 600 ; 1 Kent, 500 ; 1 Cranch, 137 ; Webster on the Independence of the Judiciary.

A study of the different theories announced and discussed in those authorities, leads to the conclusion that in the construction of constitutions and of laws the following main rules are to be followed :

The whole instrument is to be examined. Every part should be considered and so expounded as to be rendered efficacious, if practi-cable ;

The intent of the framers of the constitution or of the law should be diligently ascertained and must govern ;

The common law is to be kept in view. The object, sought to be accomplished, should be borne in mind, as well as the mischief to be remedied or guarded against ;

The construction should be uniform, so as to make the whole instrument, even in its discordant parts,—consistent and harmonious.

Coming now to the matter before us :

The motion in this case squarely presents the question : Whether the Court of Appeals for the Parish of Orleans has jurisdiction of causes, in which the matter in dispute is exactly one thousand dollars, exclusive of interest ?

In order to arrive at a correct solution of that knotty question, it is proper that we should first ascertain the objects which the Framers of the Constitution of 1879 were commissioned to accomplish, those which they contemplated, the means to which they resorted—attaching ourselves primarily and above all to the intention which must necessarily have animated them in the discharge of their arduous and important functions. They were delegated for the purpose of giving to the country a *magna charta*, which was to contrast strikingly with anterior despotic, iniquitous, and ruinous litigation, the legitimate offspring of woeful revolution and its consequent disasters,—under which the people had been so long groaning and suffering ; and to that end, they were authorized to legislate so as to prevent the recurrence of the crying abuses of the past and to provide for future guarantees, without distinction of persons or localities, by affording complete and effectual protection to life, liberty, honor, property, and the pursuit of happiness ;—a protection which necessarily was to execrate and banish all individual discriminations and irresistibly to prove general and equal in its operation, safeguarding, with the same common impartiality and efficacy, all persons entitled to enjoy similar rights and prerogatives. They were not empowered to legislate that persons in certain contingencies, residing in one section of the country, should not exercise certain rights,—while all other persons, residing in other sections of the State and similarly situated, should have the privilege of exercising rights identical in substance and nature. Their legislation touching all such persons and all such rights were,—in order to be responsive to the mission which had been assigned to them, essentially to be undiscriminating and uniform throughout the State, without heed of territorial confines or boundaries. The object which they must have had, and which they did have in view,—was—a stern compliance with their solemn obligations, under the exalted mandate conferred upon them.

It can be safely assumed, therefore, that the Framers of the Constitution of 1879 intended above all things to provide for the administration of justice equally and impartially among all parties pleading

at the bar of the law, and consequently that it never entered their mind in the least degree to assert and uphold odious discriminations of persons and things under any circumstances, and particularly on account of authorized local habitation or residence, which can in no eventuality be visited with any direct or indirect incrimination or penalty in the shape of deprivation of any common right.

To accomplish that great purpose, they have established courts of justice, by which proper and full protection is to be awarded within the sphere of their respective action. The organic law proclaims that courts shall be open, and every person, for injury done him in his rights, lands, goods, person, or reputation shall have adequate remedy, by due process of law and justice administered without denial or unreasonable delay.

Impressed with those promised considerations and guided by the rules of construction to which we have adverted, let us now enter into an examination and scrutiny of the terms used in the articles of the constitution which have a bearing on the question before us ; let us ascertain what necessarily must be the practical meaning of the obnoxious words "*less than*" found in such constitutional provisions and which are urged as restrictive of the jurisdiction of the Court of Appeals for the Parish of Orleans ; but which, at first view, when previous provisions are borne in mind, would appear to be an unfortunate illustration of accidental though not irremediable legislative inadvertence.

It is undeniable that the framers of the Constitution of 1879 intended absolutely, that the right of appeal should be respected in all the cases in which it existed previously and that for the future it should be recognized in all the cases in which the matter in dispute or fund to be distributed would exceed *two hundred dollars*, exclusive of interest.

For the purpose of revising the judgments rendered by Courts of first instance, in such cases, the constitution has created Courts of Appeals and a Supreme Court;—never contemplating in the remotest degree, that, because of their respective sectional circumscription, the various Courts of Appeal, within and without the Parish of Orleans, should have a different jurisdiction as to the amount or property in contest. Hence, Article 95, relative to Courts of Appeal generally was adopted, providing that their appellate jurisdiction shall extend to all cases,—civil or probate,—when the matter in dispute or the fund to be distributed, shall *exceed two hundred*, but not one thousand dollars, exclusive of interest. Hence also Article 81 which is to the effect that the Supreme Court shall have jurisdiction over all cases when the matter in dispute shall exceed one thousand dollars exclusive of interest.

The jurisdiction of the Court of Appeals attaching, when the matter in dispute exceeds two hundred dollars, terminates precisely where

that of the Supreme Court begins, so that there is no hiatus between the two appellate jurisdictions.

The constitutional provisions being, as we have seen, to regulate appeals in cases in which amounts exceeding two hundred, but *not* one thousand dollars, are claimed, there would be no difficulty in assigning the case before us to a different jurisdiction, viz.: the Court of Appeals for the Parish of Orleans, were it not for the terms found in Articles 128 and 129, § 2, which seemingly depart from the general provisions of Article 95, making an unaccountable exception to the same by restricting the jurisdiction of that Court to cases in which the matter in dispute is less than one thousand dollars, exclusive of interest.

Did the Framers of the Constitution, by using the terms found in those articles, mean that the Court of Appeal, in the Parish of Orleans, which is in every other regard similar to the other Courts of Appeals established throughout the State, shall be essentially different from them and to that extent impotent to afford relief to litigants, only in the particular of the upper limit of its jurisdiction ? In other words, that the Court of Appeals for the Parish of Orleans shall have jurisdiction inclusive of the highest incalculable possible fraction of one thousand dollars, and that the other Courts of Appeal in the State shall have jurisdiction up to the entirety of one thousand dollars ; thus leaving between the respective jurisdiction of those Courts an imaginary margin which it is impossible for the wisdom of man to appreciate practically ?

Do the terms used mean, that litigants residing in the Parish of Orleans in a case involving exactly one thousand dollars, shall not have a right to have the judgment rendered reviewed on appeal, while other litigants, in every other Parish of the State shall enjoy that privilege ?

Do the words employed mean, that the Courts of Appeal for the Parish of Orleans,—the jurisdiction of which covers the extensive area. of one of the largest commercial cities in the Union, in point of wealth, population, and magnitude, shall be inferior to that of the other Courts of Appeals in the State, and that the organism of that tribunal which was deemed of an importance and necessity equal to that of similar ones, shall be materially paralyzed and annihilated ?

Do the words used mean, that because parties litigant reside in the Parish of Orleans, and are concerned there in a suit involving exactly one thousand dollars, they will not be entitled to appeal from the judgment in the case, while other parties litigant residing in any other Parish of the State and parties in a similar case, shall have the right to have the judgment revised by superior authority?

Can it be supposed that the Convention ever intended any such unjust difference? Would not such distinction amount to a denial of

justice? Is it possible that in utter contempt of another constitutional provision the clear and unambiguous purport of which can neither be disguised or mistaken,—the Framers of the Constitution of 1879 intended that the Court of Appeals, in the Parish of Orleans, would be closed to litigants in cases in which one thousand dollars exactly would be claimed before the Civil District Court in the same Parish, while litigants situated alike, but in any other Parish, would have a right of appeal to the Court of Appeals having jurisdiction?

Is it possible that the Convention intended that persons for injury done them in their rights, goods, persons, reputation, property, litigating before the Civil District Court for the Parish of Orleans in cases in which the matter in dispute would not exceed one thousand dollars, should not have adequate remedy by appeal, to the Court of Appeals for that Parish; that justice should not be administered them in that respect, while other litigants, involved in a like manner, in any other Parish in the State, would have such right of appeal to the Court of Appeals having jurisdiction?

Do not those words rather mean that all the Courts of Appeal throughout the State, that of the Parish of Orleans included, shall have the same jurisdiction *ratione materiæ et ratione personæ*, other than territorial; that the litigants domiciled within the jurisdiction and those bringing themselves within it, shall have and enjoy the same rights of appeal, be and remain on the same footing of equality, to have their differences judicially adjudicated upon and set at rest by the constituted authorities? If the former were the meaning of the words mentioned, the most significant consequence would simply follow; that the Framers of the Constitution intended, in violation of their trust—a highly reprehensible and self-destructive measure, or rather an absurdity, which in fact their mind never for a moment entertained.

We must prefer the latter intendment as fully consonant with and ancillary to our well-settled conceptions of the great principles upon which society and government are established and by which mankind is shielded and ruled.

Courts of justice are powerless to legislate. They cannot add to nor take from any provision of law whether organic or statutory, but they have complete authority and it is their duty so to consider and expound the same as to prevent any injurious. clash, to reconcile apparently incompatible expressions, to make the various laws intended for the greater good of the people harmonize, and in that manner fulfill and carry out the glaring intentions of the lawgiver.

It is their duty so to construe laws and constitutional provisions that they shall be neither unjust, absurd, incongruous, or monstrous, nor in derogation of common right, when by a proper comparison with

-other enactments in the same subject found in the same act or instrument, or in *pari materiâ*, such a result can be reasonably accomplished, not only without giving an undue preference to any, but, on the contrary, by giving to every one his right and placing all on a footing of perfect equality in every like regard.

We are therefore of opinion that the jurisdiction of the Court of Appeals for the Parish of Orleans, like that of other similar Courts in the State, extends to all cases in which the matter in dispute exceeds two hundred, but not one thousand dollars, exclusive of interest ; that the case now before this Court cannot be tried by it, and is not to be, stricken from its docket without any arraignment to some other tribunal, and that it must be transferred to the Court of Appeals for the Parish of Orleans, there to be tried and determined as provided by law.

It is therefore ordered that the motion to dismiss, herein made, be denied, and it is further decreed that this cause be transferred to the Court of Appeals for the Parish of Orleans to be there disposed of as the law directs.